O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| S.L., a minor, by and through her guardian ad litem, MARY L., | ) ) ) | Case No. CV 13-06050 DDP (PJWx) |
| | ) | ORDER DENYING DEFENDANT'S MOTION |
| | ) | TO DISMISS COMPLAINT AND DENYING |
| Plaintiff, | ) | DEFENDANT'S MOTION TO STRIKE |
| | ) | PORTIONS OF THE COMPLAINT |
| v. | ) | |
| | ) | [Dkt. Nos. 17, 18] |
| DOWNEY UNIFIED SCHOOL DISTRICT, | ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Presently before the Court are Defendant's Motion to Dismiss Complaint (Docket No. 17) and Defendant's Motion to Strike Portions of the Complaint (Docket No. 18). For the reasons stated in this order, the Motions are DENIED.

**I. Factual Background**

Plaintiff S.L. ("Plaintiff") is a minor, born in the year 1997. (Complaint ¶ 10.) At all times relevant to this litigation, Plaintiff was a student enrolled in schools in the Downey Unified School District ("District" or "Defendant"). From fall 2008 to spring 2011, Plaintiff attended East Middle School within the

District. (Id. ¶ 27.) Since fall 2011, Plaintiff has attended Downey High School. (Id. ¶ 34.)

In December 2009, Plaintiff received treatment for the first time for an epileptic seizure that she suffered at home. (Id. ¶ 28.) Plaintiff's mother notified a counselor at East Middle School in or around March 2010 that Plaintiff was experiencing epileptic seizures. (Id. ¶ 29.)

The District had in place "General Guidelines" it adopted to "recognize, monitor and assist S.L. with seizure disorder," which included actions and precautionary measures that District staff should take in the event Plaintiff experienced a seizure at school. (Id. ¶ 30.) Various different "Seizure Plans," signed by Plaintiff's physician, were provided to the District. (Id. ¶¶ 31, 32.)

Plaintiff's complaint contains allegations regarding numerous incidents at school involving seizures:

> (A) Within the first month of high school, in September 2011, Plaintiff had a seizure in class. (Id. ¶ 37.) The teacher did not know what to do and did not follow the seizure plan then in place. (Id.)

> (B) Plaintiff had another seizure on September 26, 2011 while in English class, and again, the teacher did not help her or implement the seizure plan. (Id. ¶ 39.) Instead, Plaintiff's friends helped her out of class and called her mother. (Id.)

> (C) At Jazz Choir practice on February 23, 2012, no adults were present when Plaintiff had a seizure and had to be tended to by her classmates. (Id. ¶ 40.)

(D) On March 26, 2012, Plaintiff's driver's education teacher refused to let her take a classmate with her to the restroom, even after she explained that she needed someone with her in case she had a seizure. (Id. ¶ 41.)

(E) On April 2, 2012, Plaintiff had a seizure in driver's education. (Id. ¶ 42.) Instead of following the seizure plan, the teacher called 911, even though the seizure plan states that an ambulance need not be called for seizures lasting less than 5 minutes. (Id.)

(F) On April 23, 2012, Plaintiff began seeing double in P.E. class. (Id. ¶ 44.) The teacher did not implement the seizure plan; Plaintiff's classmates took her to the nurse's office, but the nurse was not there. (Id.)

(G) On May 7, 2012, Plaintiff had a seizure during Jazz Choir. (Id. ¶ 46.) The teacher was not present. (Id.) One of Plaintiff's classmates called Plaintiff's father, who arrived to find Plaintiff still in class. (Id.) The seizure plan was not implemented. (Id.)

(H) On May 17, 2012, Plaintiff had a seizure and fell face-first on the ground. (Id. ¶ 47.) District staff did not implement the seizure plan, but instead called an ambulance, even though the seizure lasted less than 5 minutes. (Id.)

(I) On May 23, 2012, Plaintiff had a seizure in Jazz Choir. (Id. ¶ 49.) District staff did not follow the seizure plan, and the Jazz Choir teacher recommended to Plaintiff's mother on the phone that they should call 911, even though the seizure lasted less than 5 minutes. (Id.) Plaintiff's mother informed the teacher that calling 911 was not necessary and

3

1    that Plaintiff should be turned on her side until the
2    seizure stopped. (Id.) Nevertheless, Plaintiff was
3    transported to the hospital. (Id.) During the same phone
4    call, the Vice Principal of Downey High School told
5    Plaintiff's mother that Plaintiff's seizures were too much
6    for the school to handle and that her parents should just
7    keep her at home. (Id. ¶ 50.)

8    Shortly after the May 23, 2012 incident, Plaintiff's parents
9    met with a school counselor. (Id. ¶ 53.) The counselor suggested
10   that Plaintiff skip school every other day, in the belief that this
11   would somehow decrease the likelihood that Plaintiff would have a
12   seizure at school. (Id.) Plaintiff's parents opposed this
13   arrangement. (Id.) District staff continued to pressure Plaintiff's
14   parents to reduce Plaintiff's attendance at school, which resulted
15   in Plaintiff coming to school two hours late each morning for about
16   one month of the 2011-2012 school year, causing her to miss two
17   hours of instruction each day. (Id. ¶ 54.) Despite this
18   arrangement, the District refused to allow Plaintiff any additional
19   time to complete class assignments and homework or to take tests
20   she missed. (Id. ¶ 55.) This refusal was in contravention of
21   District policy regarding absence due to illness. (Id. ¶ 57.)

22   During the 2011-2012 school year, Plaintiff's mother
23   repeatedly asked the District to develop a § 504 plan for
24   Plaintiff. (Id. ¶ 58.) On June 8, 2012, the District finally found
25   Plaintiff eligible for § 504 accommodations because her "medical
26   condition impedes daily functioning and access to a free and
27   appropriate public education." (Id. ¶ 59.) However, Plaintiff
28   alleges that the § 504 plan was inadequate, as it failed to provide

4

necessary accommodations for making up missed work and also failed to provide any training to District staff regarding Plaintiff's disability or how to assist in the event of a seizure. (<u>Id.</u>)

In her ninth grade year at Downey High School, Plaintiff was admitted to Jazz Choir. (<u>Id.</u> ¶ 36.) She was told that once she was admitted, there would be no more auditions and that she could continue in Jazz Choir throughout high school. (<u>Id.</u>) She performed in concerts and traveled with the team to participate in competitions throughout her ninth grade year. (<u>Id.</u> ¶¶ 61-62.) She received high grades in the class. (<u>Id.</u> ¶ 62.) Ten days after Plaintiff had her last seizure in Jazz Choir class, the rules were changed for participation in Jazz Choir, requiring members to re-audition for membership the next year. (<u>Id.</u> ¶ 65.) Everyone who re-auditioned was accepted for the 2012-2013 school year except for Plaintiff and one other student. (<u>Id.</u>) According to the student judges, Plaintiff's audition performance was superior to other students who were accepted, but the Jazz Choir teacher said he wanted "something else" and did not accept Plaintiff. (<u>Id.</u> ¶ 66.) Plaintiff alleges that she was excluded from Jazz Choir because of her disability and the District's failure to properly accommodate it. (<u>Id.</u> ¶ 68.) Plaintiff tried out for Jazz Choir again at the end of the 2012-2013 school year, with the same result - most of the student judges voted to put Plaintiff back on the team, but the Jazz Choir teacher did not accept her onto the team. (<u>Id.</u> ¶ 80.)

Plaintiff attended summer school classes at Downey High School during the summer of 2012. (<u>Id.</u> ¶ 70.) Plaintiff's 17-year-old brother attended class with her because Plaintiff alleges that the District did not provide the support Plaintiff required. (<u>Id.</u>) On

or about July 5, 2012, Plaintiff wrote a letter to the District requesting § 504 accommodations. (Id. ¶ 71.) A physician letter was delivered to the District on or about July 12, 2012, clarifying Plaintiff's physician's recommendations for care during and after a seizure. (Id.) Plaintiff had a seizure in summer school on July 17, 2012, during which her brother assisted rather than her teacher; Plaintiff had at least two additional seizures during summer school and was attended to by her brother each time. (Id. ¶¶ 72, 74.)

On or about July 23, 2012, the District revised Plaintiff's § 504 plan to include a one-to-one aide to follow her around campus. (Id. ¶ 73.) This accommodation was implemented in fall 2012. (Id. ¶ 76.) Plaintiff alleges that during the 2012-2013 school year, she had three different aides, none of whom were trained to handle her seizures. (Id. ¶ 77.) The District did not implement the proper seizure plans during Plaintiff's seizures at school during the 2012-2013 school year. (Id. ¶ 78.) Plaintiff alleges that she had an increase of seizures during summer 2013 and fears that she will continue to face discrimination by the District. (Id. ¶ 81.)

**II. Procedural Background**

On July 11, 2012, Plaintiff filed a Compliance Complaint against the District, and amended that complaint on July 13, 2012. (Id. ¶ 14.) On August 16, 2012, Plaintiff filed a Request for Mediation and Due Process Hearing with the Special Education Division of the California Office of Administrative Hearings ("OAH"). (Id. ¶ 15.) Plaintiff alleged that the District had failed to timely identify and assess Plaintiff for special education services, thereby denying her a free, appropriate public education ("FAPE") under the Individuals with Disabilities Education Act

6

("IDEA"). (Id.) Plaintiff also alleged that the District had
discriminated against her solely on the basis of her disability and
denied her the benefits of participation in public education, in
violation of § 504 of the Rehabilitation Act and the Americans with
Disabilities Act. (Id.)

In response to the Due Process Complaint, the District
requested and received written consent of Plaintiff's parents to
conduct an assessment of Plaintiff. (Id. ¶ 16.) After conducting
the assessment, the District concluded that Plaintiff did not meet
the requirements for a Specific Learning Disability. (Id.) On
October 10, 2013, an IEP meeting was held for Plaintiff, at which
time the district concluded that Plaintiff was not eligible for
special education and related services under the IDEA. (Id. ¶ 17.)
On November 13, 2013, another IEP meeting was help, with the same
result. (Id. ¶ 18.) The District concluded that Plaintiff's needs
could be met through a § 504 plan. (Id.) On November 27, 2012,
Plaintiff dismissed the Due Process Complaint based on the
District's finding that Plaintiff was not eligible for special
education services and because Plaintiff believed that this meant
that the OAH did not have jurisdiction to adjudicate the claims.
(Id. ¶ 19.)

Plaintiff then filed this action, asserting the following
claims: (1) discrimination under Section 504 of the Rehabilitation
Act for failure to provide access to programs and activities; (2)
discrimination under the Americans with Disabilities Act ("ADA")
for failure to provide access to programs and activities; (3)
discrimination under Section 504 for denial of FAPE; (4) violation

1  of California's Unruh Civil Rights Act based on discrimination; and

2  (5) discrimination under Cal. Gov. Code § 11135.

3       Defendant now moves to dismiss the complaint because Defendant

4  claims that Plaintiff failed to exhaust administrative remedies as

5  required by the IDEA. Defendant also argues in the alternative that

6  Plaintiff has failed to allege sufficient facts to state a claim

7  under Rule 12(b)(6). Defendant then argues that because all of

8  Plaintiff's federal claims should be dismissed for failure to

9  exhaust and/or failure to state a claim, Plaintiff's remaining

10  state law claims should also be dismissed. Defendant also brings a

11  motion to strike portions of Plaintiff's complaint.

12  **III. Legal Standard**

13       A complaint will survive a motion to dismiss when it contains

14  "sufficient factual matter, accepted as true, to state a claim to

15  relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S.

16  662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

17  570 (2007)). When considering a Rule 12(b)(6) motion, a court must

18  "accept as true all allegations of material fact and must construe

19  those facts in the light most favorable to the plaintiff." Resnick

20  v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint

21  need not include "detailed factual allegations," it must offer

22  "more than an unadorned, the-defendant-unlawfully-harmed-me

23  accusation." Iqbal, 556 U.S. at 678. Conclusory allegations or

24  allegations that are no more than a statement of a legal conclusion

25  "are not entitled to the assumption of truth." Id. at 679. In other

26  words, a pleading that merely offers "labels and conclusions," a

27  "formulaic recitation of the elements," or "naked assertions" will

28  not be sufficient to state a claim upon which relief can be

1  granted. Id. at 678 (citations and internal quotation marks

2  omitted).

3       "When there are well-pleaded factual allegations, a court should

4  assume their veracity and then determine whether they plausibly

5  give rise to an entitlement of relief." Id. at 679. Plaintiffs must

6  allege "plausible grounds to infer" that their claims rise "above

7  the speculative level." Twombly, 550 U.S. at 555. "Determining

8  whether a complaint states a plausible claim for relief" is a

9  "context-specific task that requires the reviewing court to draw on

10 its judicial experience and common sense." Iqbal, 556 U.S. at 679.

11 **IV. Discussion**

12      A. IDEA Exhaustion Requirement

13      "The IDEA was enacted to protect children with disabilities

14 and their parents by requiring participating states to provide 'a

15 free appropriate public education [("FAPE")] that emphasizes

16 special education and related services designed to meet [disabled

17 students'] unique needs and prepare them for further education,

18 employment, and independent living.'" Payne v. Peninsula Sch.

19 Dist., 653 F.3d 863, 871 (9th Cir. 2011) (quoting 20 U.S.C. §

20 1400(d)(1)(A). The IDEA provides extensive procedural

21 protections, which must be exhausted before filing a case in the

22 courts. Id. The IDEA's exhaustion requirement provides:

23          Nothing in this chapter shall be construed to restrict

24          or limit the rights, procedures, and remedies available

25          under the Constitution, the Americans with Disabilities

26          Act of 1990 [42 U.S.C. § 12101 *et seq.*], title V of the

27          Rehabilitation Act of 1973 [29 U.S.C. § 791 *et seq.*], or

28          other Federal laws protecting the rights of children

9

1    with disabilities, except that before the filing of a
2    civil action under such laws seeking relief that is also
3    available under this subchapter, the procedures under
4    subsections (f) and (g) shall be exhausted to the same
5    extent as would be required had the action been brought
6    under this subchapter.

7    20 U.S.C. § 1415(l).

8        The exhaustion requirement is limited by the language of the
9    statute and recent case law. "[T]he IDEA's exhaustion provision
10   applies only in cases where the relief sought by a plaintiff in
11   the pleadings is available under the IDEA. Non-IDEA claims that do
12   not seek relief available under the IDEA are not subject to the
13   exhaustion requirement, even if they allege injuries that could
14   conceivably have been redressed by the IDEA." Payne v. Peninsula
15   Sch. Dist., 653 F.3d 863, 871 (9th Cir. 2011). Exhaustion is
16   required if a disabled student (1) seeks an IDEA remedy or
17   functional equivalent; (2) seeks prospective injunctive relief to
18   alter an IEP or the educational placement; or (3) seeks to enforce
19   rights that arise as a result of a denial of FAPE premised upon a
20   violation of the IDEA (whether pled as an IDEA or a Section 504
21   claim). Id. at 874.[1]

22
23

24       [1]The Court notes that Plaintiff takes issue with Defendant's
25   characterization of the exhaustion requirement as a jurisdictional
     requirement under Payne. Plaintiff is correct that under current
26   Ninth Circuit law, the IDEA exhaustion requirement is no longer
     considered a jurisdictional requirement, but is instead a "claims
27   processing requirement" or an affirmative defense. However, under
     either scheme it is appropriate for the Court to dismiss the action
28   on Defendant's motion. Therefore, the proper characterization of
     the exhaustion requirement is irrelevant to the Court's analysis.

1   Plaintiff makes two interrelated arguments to attempt to avoid
2   the exhaustion requirements of the IDEA. First, Plaintiff argues
3   that her claims do not seek relief that is available under the IDEA
4   by framing her claims as discrimination claims. Second, Plaintiff
5   argues that Defendant should be judicially estopped from arguing
6   that Plaintiff failed to exhaust administrative remedies because
7   Defendant previously took the position that Plaintiff was
8   ineligible for special education under the IDEA.

9   Generally speaking, the distinction between the IDEA, on the
10  one hand, and the ADA and § 504, on the other, is that "[t]he ADA
11  and § 504 provide relief from *intentional* discrimination whereas
12  the IDEA provides relief from inappropriate placement decisions,
13  regardless of discrimination." T.B. ex rel. Brenneise v. San Diego
14  Unified Sch. Dist., 2012 WL 1611021, at *5 (S.D. Cal. 2012).
15  However, there is much overlap between claims that can be brought
16  under the various statutes.

17  Plaintiff's claims in this case are for: (1) discrimination
18  under Section 504 for failure to provide access to programs and
19  activities; (2) discrimination under the ADA for failure to provide
20  access to programs and activities; (3) discrimination under Section
21  504 for denial of FAPE; (4) violation of California's Unruh Civil
22  Rights Act based on discrimination; and (5) discrimination under
23  Cal. Gov. Code § 11135. Plaintiff requests the following relief:
24  (1) damages, including statutory damages; (2) permanent injunctive
25  relief enjoining Defendant from discriminating in the future; (3)
26  reasonable attorney's fees and costs; and (4) compensatory
27  education.

28

1    Cases interpreting <u>Payne</u>, or interpreting the IDEA exhaustion

2 language in other circuits, generally hold that claims like

3 Plaintiff's claims in this case are subject to the exhaustion

4 requirement because they seek "relief available" under the IDEA.

5 For example, a Michigan district court found that a student's

6 claims that the school failed to accommodate her disability by not

7 allowing her to bring a service dog with her to school were subject

8 to the exhaustion requirement. <u>EF ex rel. Fry v. Napoleon Community</u>

9 <u>Schools</u>, 2014 WL 106624, at *5 (E.D. Mich. 2014). Plaintiff

10 strongly disclaimed any denial of FAPE, instead premising her

11 claims on the ADA and § 504. <u>Id.</u> The court concluded that such an

12 accommodation would "implicate issues relating to EF's IEP," and

13 therefore that the IDEA exhaustion requirement was triggered by the

14 claims. <u>Id.</u>

15    Similarly, in a Missouri case, Plaintiff argued that his

16 discrimination claims were "wholly unrelated to the IEP process

17 under the IDEA." <u>A.L.A. ex rel. Liberty v. Avilla R-XIII Sch.</u>

18 <u>Dist.</u>, 2011 WL 6093301, at * 5 (W.D. Missouri 2011). Plaintiff

19 sought monetary damages and "compensatory education" due to his

20 "not [being] provided with the same opportunity as his non-disabled

21 peers to receive a free appropriate, public education." <u>Id.</u> The

22 court found that relief Plaintiff sought is exactly the kind of

23 relief available under IDEA. <u>Id.</u> at 6. <u>See also</u> <u>J.B. ex rel. Bailey</u>

24 <u>v. Avilla R-XIII Sch. Dist.</u>, 2011 WL 6887863 (W.D. Missouri 2011)

25 (same); <u>D.C. ex rel. T.C. v. Oakdale Joint Unified Sch. Dist.</u>, 2011

26 WL 5828187 (E.D. Cal. 2011) (finding exhaustion required where

27 plaintiff's claims alleged that he was "provided with an unequal

28 education compared with his non-disabled peers, in that they were

1    not subjected to and did not have their education adversely

2    impacted by this treatment from their District staff"); <u>Cayla R. v.</u>

3    <u>Morgan Hill Unified Sch. Dist.</u>, 2012 WL 1038664 (N.D. Cal. 2012);

4    <u>B.K. ex rel. Keller v. Lake Oswego Sch. Dist.</u>, 2012 WL 844222 (D.

5    Ore. 2012).

6         On the other hand, there are situations where courts have

7    found that exhaustion was not required because the plaintiff was

8    not seeking "relief available" under the IDEA. These are cases in

9    which a special education student brings an action under § 504 or

10   the ADA based on harassment or infliction of physical or emotional

11   pain, where the plaintiff seeks monetary damages for "physical pain

12   and anguish, physical impairment, and medical and mental health

13   expenses." <u>M.J. v. Marion Indep. Sch. Dist.</u>, 2013 WL 1882330, at

14   *12 (W.D. Texas 2013). Plaintiff's claims clearly do not fall into

15   this category of ADA and § 504 claims normally excluded from the

16   IDEA exhaustion requirement. Her claims rely on a denial of FAPE

17   and a failure to accommodate her disability to allow her to access

18   educational benefits to the same extent as other students, and

19   therefore would ordinarily be subject to the exhaustion

20   requirement.

21        However, there is an important distinction between all of the

22   cases cited and discussed above and Plaintiff's case: all of those

23   plaintiffs had been found eligible for special education services

24   under the IDEA and had IEPs in place. Therefore, each of those

25   plaintiffs *could* have sought relief under the IDEA that was

26   functionally equivalent to the relief they were seeking under the

27   other statutes.

28

                                    13

1    In contrast, one court in this district has addressed a
2  situation that is highly analogous to the instant case. In D.R. ex.
3  Rel. Courtney R. v. Antelope Valley Union High Sch. Dist., 746 F.
4  Supp. 2d 1132 (C.D. Cal. 2010), the plaintiff was a student with
5  Charcot-Marie-Tooth Disease, which causes reduced hand and leg
6  strength and required her to use an elevator to access classrooms
7  on the second floor of her school. Even though the court found that
8  the plaintiff's condition impaired her academic performance,
9  including causing her to miss instruction time waiting for elevator
10 assistance, the court determined that she did not qualify for
11 services under the IDEA, which involves "specially designed
12 instruction" required to meet student needs. Id. at 1142. Because
13 the plaintiff didn't need any instructional modifications, she was
14 ineligible for IDEA services. Id. at 1145. Further, the plaintiff's
15 school district had "never considered plaintiff eligible under
16 IDEA." Id. at 1144. The court concluded that this excused the IDEA
17 exhaustion requirement, since there was no "relief available" for
18 the plaintiff under the IDEA. Id. at 1145.
19    The facts of the instant case are closely analogous to D.R.
20 Here, Plaintiff's disability does not appear to require
21 instructional modifications, and Plaintiff does not seek any such
22 modifications. Instead, Plaintiff's academic performance has
23 suffered because she has had to miss class due to her seizures, and
24 she alleges that the District has not properly accommodated her
25 need to make up work nor administered proper treatment so that she
26 can remain in her regular instructional classes. In addition, the
27 District has determined on multiple occasions that Plaintiff does
28 not qualify for special education services under the IDEA.

1  Therefore, Plaintiff does not seek "relief available" under the

2  IDEA because she is ineligible to seek relief under that statute.

3  Therefore, the Court finds that administrative exhaustion of

4  Plaintiff's claims was not required once the District determined

5  that Plaintiff was ineligible for special education services under

6  the IDEA.[2]

7       B. <u>Sufficiency of the Pleadings</u>

8       Defendant argues that Plaintiff's complaint should be

9  dismissed because she fails to plead sufficient facts to support

10 her claims. A prima facie claim for discrimination under § 504 or

11 the ADA requires pleading facts that show (1) the plaintiff is

12 disabled under the meaning of § 504 or the ADA; (2) the plaintiff

13 was "otherwise qualified" for the benefits she was denied; (3) the

14 plaintiff was intentionally discriminated against on the basis of

15 her disability (for ADA claims) or *solely* on the basis of her

16 disability (for § 504 claims); and (4) the entity is a public

17 entity (for ADA claims) or receives federal financial assistance

18 (for § 504 claims). <u>Zukle v. Regents of the Univ. of California</u>,

19 _____

20      [2]While the Court need not reach Plaintiff's judicial estoppel
   argument, the Court notes that the purpose of the administrative
21 exhaustion requirement is to give state and local educational
   agencies "the first opportunity to correct shortcomings in their
22 educational programs for disabled children" and "to prevent courts
   from acting as ersatz school administrators and making what should
23 be expert determinations about the best way to educate disabled
   students." <u>Payne</u>, at 875-76. The prior administrative proceeding
24 gave the District just such an opportunity. However, the District
   persuaded Plaintiff to dismiss her request for a due process
25 hearing by taking the position that she was not entitled to such a
   hearing because she did not qualify for services under the IDEA; in
26 so doing, the District chose to pass up any opportunity it might
   have had to address Plaintiff's claims at the state and local
27 level. While the underlying facts of this case may not be
   sufficient to justify application of the doctrine of judicial
28 estoppel, the public policy underlying the administrative process
   has been sufficiently served here.

166 F.3d 1041, 1045 (9th Cir. 1999). Defendant does not dispute that Plaintiff has a disability within the meaning of the statutes or that the District is a public entity and receives federal financial assistance. Defendant argues that Plaintiff has not pled sufficient facts to support the second and third elements of her discrimination claims.

In order to show that Plaintiff is "otherwise qualified" to participate in the educational program, she must show that she could "meet the essential eligibility requirements of the school, with or without reasonable accommodation." Id. In this case, Plaintiff is "otherwise qualified" to participate in the District's educational program because she is a student residing within the boundaries of the District. Upon reply, Defendant does not refute Plaintiff's argument that this fact alone establishes her eligibility to participate in the educational program because she meets the "essential eligibility requirements" for attendance at a public high school within the District. Therefore, the Court finds that the second element of Plaintiff's discrimination claims has been adequately pled.

With respect to the third element, Defendant argues that Plaintiff has not pled sufficient facts to support her claim that she was "denied benefits," nor that such denial was the result of "intentional discrimination." The Court finds that Plaintiff has pled sufficient facts to support her claim that she was denied benefits. She was excluded from class time, not allowed to make up work or otherwise compensate for the missed class time, and precluded from participation in Jazz Choir. See D.R., 746 F. Supp. 2d at 1146-47 (finding that the plaintiff was denied benefits

1  because she was "excluded from class time, student club meetings,

2  and school functions" as a result of her disability). Taking the

3  facts in the complaint in the light most favorable to Plaintiff,

4  these actions denied Plaintiff the benefits of a full public

5  education.

6      In order to show that Plaintiff was "intentionally

7  discriminated against" under the ADA or § 504, Plaintiff must

8  allege sufficient facts to show that Defendant acted with

9  deliberate indifference. In order to establish that Defendant was

10 deliberately indifferent, Plaintiff must show that (1) Defendant

11 had knowledge that a harm to a federally protected right is

12 substantially likely and (2) Defendant failed to act upon that

13 likelihood. <u>Lovell v. Chandler</u>, 303 F.3d 1039, 1056 (9th Cir.

14 2002).

15     In this case, the District was on notice that Plaintiff needed

16 accommodations in order to obtain the benefits of her public

17 education. Plaintiff and her parents repeatedly provided

18 Plaintiff's school with physician-approved seizure plans and spoke

19 with multiple counselors, teachers, and the vice principal

20 regarding Plaintiff's needs. Furthermore, Plaintiff had multiple

21 seizures while in school, such that it should have been obvious to

22 Defendant that she required accommodation for her seizure disorder.

23 <u>See</u> <u>Duvall v. County of Kitsap</u>, 260 F.3d 1124, 1139 (9th Cir. 2001)

24 ("When the plaintiff has alerted the public entity to his need for

25 accommodation (or where the need for accommodation is obvious ...),

26 the public entity is on notice that an accommodation is

27 required."). Therefore, Plaintiff has pled sufficient facts to

28

1   support a finding that Defendant was on notice of Plaintiff's need

2   for accommodation.

3       The Court also finds that Plaintiff has pled sufficient facts

4   to support Plaintiff's allegation that the District did not

5   properly act on the likelihood of harm by offering Plaintiff

6   reasonable accommodations. Taking Plaintiff's pleadings as true,

7   the District's suggestions with regard to accommodation of

8   Plaintiff's seizures did not do enough to address the potential

9   harm. The District's suggestions that Plaintiff remain at home for

10  a portion of the school day, or for the entire day every other day,

11  do not constitute sufficient action to defeat Plaintiff's claim

12  because Plaintiff alleges that such accommodations were

13  unreasonable and did not address her needs adequately. Further,

14  Plaintiff alleges that the aides she was provided were not properly

15  trained to handle her seizures. Plaintiff and her parents continued

16  to make clear to the District that the accommodations the District

17  was offering were not sufficient and that other, potentially

18  reasonable accommodations would better meet Plaintiff's needs.

19  Therefore, Plaintiff has pled sufficient facts to support her

20  claims under § 504 and the ADA.

21      With regard to Plaintiff's state law claim under the Unruh

22  Civil Rights Act, Defendant argues that Plaintiff's complaint is

23  insufficient because Plaintiff has failed to sufficiently allege

24  that she was harmed. However, "[a] violation of the right of any

25  individual under the federal Americans with Disabilities Act ...

26  shall also constitute a violation of [the Unruh Act]." Cal. Civ.

27  Code § 51(f). Further, Plaintiff plainly did allege educational

28  harm stemming from Defendant's failure to accommodate her seizures

1   properly. She missed school, was unable to make up assignments, and

2   was excluded from the Jazz Choir, all of which are cognizable

3   harms. See D.R., 746 F. Supp. 2d at 1145 (finding that the

4   plaintiff would suffer irreparable harm from her continued

5   exclusion from classes and inability to participate in

6   extracurricular activities). Therefore, Plaintiff's pleading is

7   sufficient to state a plausible claim for violation of the Unruh

8   Civil Rights Act.

9       Finally, Defendant's only argument as to why Plaintiff's fifth

10  claim, for violation of Cal. Gov. Code § 11135, should be dismissed

11  is that the Court should decline to exercise supplemental

12  jurisdiction over Plaintiff's state law claims after dismissing her

13  federal claims. As Plaintiff's federal claims survive, this

14  argument is unavailing.

15      Therefore, the Court DENIES Defendant's Motion to Dismiss

16  Plaintiff's complaint in its entirety.

17      C. Motion to Strike

18      Defendant also filed a motion to strike portions of

19  Plaintiff's complaint under Rule 12(f). (Docket No. 18.) The

20  portions of the complaint that Defendant seeks to strike provide

21  background medical and statistical information about epilepsy,

22  types of seizures, and proper seizure treatment. Defendant argues

23  that such allegations have no bearing on the case and are not

24  pertinent to the facts alleged in Plaintiff's complaint.

25      Rule 12(f) of the Federal Rules of Civil Procedure states that

26  the "court may strike from a pleading an insufficient defense or

27  any redundant, immaterial, impertinent, or scandalous matter." Fed.

28  R. Civ. P. 12(f). Immaterial matter is that which has no essential

1  or important relationship to the claim for relief or the defenses

2  being pled. <u>Whittlestone, Inc. v. Handi-Craft Co.</u>, 618 F.3d 970,

3  974 (9th Cir. 2010)(quotation and citation omitted). Impertinent

4  matter consists of statements that do not pertain, and are not

5  necessary, to the issues in question. <u>Id.</u> Under Rule 12(f), the

6  court has the discretion to strike a pleading or portions thereof.

7  <u>MGA Entm't, Inc. v. Mattel, Inc.</u>, No. CV 05-2727 NM(RNBx), 2005 WL

8  5894689, at *4 (C.D. Cal. 2005).

9      "A motion to strike under Rule 12(f) should be denied unless

10  it can be shown that no evidence in support of the allegation would

11  be admissible, or those issues could have no possible bearing on

12  the issues in the litigation." <u>Gay-Straight Alliance Network v.</u>

13  <u>Visalia Unified Sch. Dist.</u>, 262 F. Supp.2d 1088, 1099 (E.D. Cal.

14  2001). Courts must view the pleading under attack in the light most

15  favorable to the pleader, treating as admitted all material facts

16  alleged, and all reasonable presumptions that can be drawn

17  therefrom. <u>California v. United States</u>, 512 F. Supp. 36, 39 (N.D.

18  Cal. 1981). Background information need not be stricken because it

19  provides the court "with a fuller understanding of the dispute."

20  <u>Kaiser Found. Hosp. v. California Nurses Ass'n</u>, No. 11-5588 SC,

21  2012 WL 440634, at *4 (N.D. Cal. 2012).

22      The Court is convinced that the background facts that

23  Plaintiff includes in her complaint are useful for a fuller

24  understanding of the dispute. The Court is not an expert in medical

25  conditions, and Plaintiff's pleadings assist the Court in

26  understanding why Defendant's actions were allegedly improper. Such

27  facts may also be relevant to an assessment of whether Defendant's

28  offered accommodations were medically reasonable. Further,

1   Defendant will not be prejudiced by allowing the background

2   information to remain in the complaint. The veracity of such

3   purported factual statements can be challenged by evidence at a

4   later stage in the proceedings. Therefore, the Court declines to

5   strike any portion of Plaintiff's complaint.

6   **V. Conclusion**

7         For the foregoing reasons, Defendant's Motion to Dismiss is

8   DENIED and Defendant's Motion to Strike is DENIED.

9

10  IT IS SO ORDERED.

11

12

13  Dated: March 10, 2014

14                                         DEAN D. PREGERSON
                                           United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28